# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY CELESTINE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FCA US LLC,<br><br>　　　　Defendant. | Case No.: 2:17-cv-00597 - JLT<br><br>ORDER ON MOTIONS IN LIMINE; ORDER VACATING THE HEARING ON THE MOTIONS IN LIMINE<br>(Docs. 63-69) |

Mr. Celestine purchased a 2012 Dodge Durango in April 2012, which he contends had serious defects and nonconformities to warranty. He contends FCA UC LLC manufactured the vehicle and is liable for violations of the Song-Beverly Consumer Warranty Act and fraudulent inducement under California law. The defendant denies these claims.

The parties have filed pretrial motions in limine. Because the positions of the parties are adequately set forth, the Court **VACATES** the hearing on the motion in limine.

## I.     Legal Standards Governing Motions in Limine

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir.

1

2003) (citations omitted).

Importantly, motions in limine seeking the exclusion of broad categories of evidence are disfavored. See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. Sperberg, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. Jonasson, 115 F. 3d at 440.

For example, under the Federal Rules of Evidence, any evidence that is not relevant is not admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrate a change of circumstances that would make the evidence admissible, such as for impeachment or if the opponent opens the door to allow for its admissibility. However, if this occurs, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and their witnesses and not merely on the moving party.

## II. Plaintiffs' Motions in Limine

### A. Plaintiff's motion in limine No. 1 (Doc. 63)

Plaintiff notes that his recollection about whether he "called FCA or one of its authorized dealers regarding the issues he has had with the vehicle is unclear." (Doc. 63 at 4) Mr. Celestine argues that whether he requested repurchase, FCA had a duty to monitor vehicle repairs and to repurchase the truck. In short, the plaintiff seeks to prohibit FCA from asking him questions about his efforts to obtain buyback and his failure to engage in FCA's dispute resolution program and to prohibit FAC to presenting evidence about its dispute resolution program. Id. at 5.

Indeed, Song-Beverly places the burden on the manufacturer to monitor warranty repair attempts and "does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties-other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle," even though, "as a practical matter," most consumers likely will make such a request. Krotin v. Porsche Cars N. Am., Inc., 38 Cal.App.4th 294, 302-303 (1995), as modified on denial of reh'g (Sept. 14, 1995); see also id. at 303 ("As it stands now, however, the manufacturer has an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts, and the buyer need not reject or revoke acceptance of the vehicle at any time. The buyer need only provide the manufacturer with a reasonable opportunity to fix the vehicle."); Lukather v. Gen. Motors, LLC, 181 Cal. App. 4th 1041, 1050 (2010) (citing Krotin and rejecting the defendant's contention that plaintiff "himself had a duty to act promptly under the Act").

The defense argues that the fact the plaintiff never complained to FCA or a dealership that the vehicle was defective is probative of whether the vehicle had a defect that substantially impaired its use, value or safety that FCA did not repair within a reasonable number of attempts. (Doc. 71 at 3) The Court agrees. Thus, the motion is **DENIED**.

### B. Plaintiff's motion in limine No. 2 (Doc. 64)

The plaintiff seeks to exclude testimony from Michael McDowell, who is FCA's "person most

knowledgeable.[1]" (Doc. 64) The plaintiff asserts correctly that only designated experts are permitted to offer opinions.

FCA reports that the plaintiff did not take Mr. McDowell's deposition, so he can have no idea what Mr. McDowell will say. (Doc. 72) FCA notes also that Mr. McDowell is a long-time employee who, due to this experience working for FCA, has personal knowledge about various topics including the Customer Assistance Inquiry Records. FCA clarifies that it has no intention of seeking testimony that is beyond Mr. McDowell's personal knowledge and which strays into expert testimony.

Consequently, the motion is **DENIED** and neither party is entitled to ask Mr. McDowell questions that would urge him to stray into expert territory and he is not permitted to offer an expert opinion.

**III.    Defendant's Motions in Limine**

**A.    Defendant's motion in limine No. 1 (Doc. 65)**

The defendant seeks to exclude the testimony or Dr. Barbara Luna. (Doc. 65) The defense argues that Dr. Luna has no mechanical or engineering expertise and will rely upon the expertise of the plaintiff's expert, Darrell Blasjo, to establish that the TIPM problems she has discovered documented in Chrysler's documents relate to Mr. Celestine's vehicle. (Doc. 65 at 3-4, 38) However, Dr. Luna admitted at her deposition she did not read Mr. Blasjo's report or his deposition testimony before forming her opinions or sitting for her deposition, though she intended to do so before trial. (Doc. 65 at 39) The defense reports also that Mr. Blasjo denied that any of the complaints the plaintiff experienced with his truck related to the TIPM. (Doc. 65 at 44 ["he did not experience any – any problem or concern that I related to a TIPM-based problem."]).

---

[1] The Court is at a loss to understand the descriptor "person most knowledgeable" in this context. In general, under Fed.R.Civ.p.30(b)(6), an entity is entitled to designate a person to speak for it at a deposition and to be bound by the person's testimony because it equates to the entity's testimony. The designee's role is to testify as to the entity's interpretation of events and documents. United States v. J.M. Taylor, 166 F.R.D. 356, 361 (M.D.N.C.1996). Often this person is referred to as the "person most knowledgeable" though the deponent need not have the most knowledge on any of the topics upon which he will be examined. Rather, the designee must be sufficiently prepared to provide knowledgeable and binding testimony. United States v. Taylor, 166 F.R.D. 356, 361 aff'd, 166 F.R.D. 367 (M.D.N.C. 1996); Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc., 251 F.R.D. 534, 539 (D.Nev. 2008). This descriptor does not translate to trial. At trial, the entity may call witnesses who have personal knowledge of the events or documents or to act as the custodian of records. The entity may not call a witness who lacks personal knowledge to testify to inadmissible information.

The plaintiff reports that Dr. Luna will testify,

> whether or not the internal documents obtained from Chrysler show that its corporate officials had knowledge of the TIPM defects, and whether such knowledge and the nondisclosure of such defects complied with Chrysler's disclosure obligations under applicable regulations and its own code of conduct, and presented evidence of questionable corporate practices.

(Doc. 73 at 4) According to plaintiff Dr Luna,

> is expected to testify that, based on her review of thousands of pages of Chrysler's corporate records, the management and directors at Chrysler had actual notice of information that relates to reported problems that were attributed by Chrysler's own personnel to the TIPM-7, and that Chrysler concealed those facts from Plaintiff and other customers alike.

Id. at 5. The plaintiff argues,

> Dr. Luna is permitted to rely on Chrysler's own corporate documents to formulate opinions regarding Chrysler's knowledge of the TIPM issues, and opinions regarding Chrysler's decisions concerning disclosure of that information to its shareholders, the consumer marketplace, and its own network of dealerships and repair facilities.

Id. at 6. The plaintiff explains,

> Plaintiff designated Dr. Luna to testify as to matters including, but not limited to, corporate business culture, corporate customs and practices, and corporate standards of concealing or omitting material information. Ultimately, Dr. Luna's testimony will likely center around issues pertaining to whether Chrysler's business practices were deceptive and being performed in compliance with Chrysler's various disclosure obligations and its own code of conduct.

Id. at 8 The plaintiff argues, "in an effort to discredit Dr. Luna's opinion, Chrysler focuses on the fact that she has the same opinion about Chrysler's actions with respect to the TIPM on different makes and model years; Chrysler ignores the fact that the same TIPM is installed in those different vehicles, and even that its recalls and repair diagnoses related to the TIPM are frequently applicable to multiple different vehicles and model years. Furthermore, there is no dispute that the TIPM-7 was used by Chrysler in this Plaintiff's vehicle" Id. at 6-7.

Under Federal Rule of Evidence Rule 702, an expert witness may testify as to his opinions if: "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Id. The Court is obligated to serve in a "gatekeeping" function.

5

Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The trial court must make an initial assessment of the proposed expert testimony to ensure that it "rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. In other words, the trial court must consider (1) whether the reasoning or methodology underlying the expert testimony is valid (the reliability prong); and (2) whether the reasoning or methodology can be applied to the facts in issue (the relevancy prong). See id. at 592-93.

To determine the reliability of expert testimony, the Supreme Court has identified four factors that a trial court may consider: "(1) whether the 'scientific knowledge . . . can be (and has been) tested'; (2) whether 'the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) 'general acceptance.'" Obrey v. Johnson, 400 F.3d 691, 696 (9th Cir. 2005) (quoting Daubert, 509 U.S. at 593-94). These factors, however, are not exclusive. See Kumho Tire, 526 U.S. at 150 ("Daubert makes clear that the factors it mentions do not constitute a definitive checklist or test." (emphasis in the original) (citation and internal quotation marks omitted)). Rather, the trial court enjoys "broad latitude" in deciding how to determine the reliability of proposed expert testimony. Id. at 141-42. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1318 (9th Cir. 1995) ("Daubert II"). Second, the proposed expert testimony must be "relevant to the task at hand," meaning that it "logically advances a material aspect of the proposing party's case." Daubert, 509 U.S. at 597. The Supreme Court has explained that expert testimony is relevant if it assists the trier of fact in understanding evidence or determining a fact in issue in the case. Daubert, 509 U.S. at 591.

Dr. Luna is a forensic accountant and damages and valuation expert. She authored an expert report in this case (which has not been provided). Plaintiff argues that Dr. Luna has a reliable basis in the knowledge and experience of the relevant discipline because she has "thirteen certifications and accreditations, including those of a Certified Fraud Examiner" and has "over thirty years of experience as a forensic accountant and damages and valuation expert in business, personal injury, and bankruptcy maters." (Doc. 73 at 4) The plaintiff argues that Dr. Luna's testimony falls outside the ordinary knowledge of the jury and that her expertise concerning business practices and whether

Chrysler acted in compliance with its "various disclosure obligations and its own code of conduct" will be helpful to the jury. Id.

The Court agrees that Dr. Luna's lack of firsthand automotive engineering knowledge does not render all of her testimony inadmissible. "[E]xpert opinions may find a basis in part 'on what a different expert believes on the basis of expert knowledge not possessed by the first expert,'" and this is in fact "common in technical fields." In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig., 978 F.Supp.2d 1053, 1066 (C.D. Cal. 2013) (quoting Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 613 (7th Cir. 2002)). An expert may rely on another expert's opinion in formulating her own opinion. The fact that Dr. Luna was provided internal FCA documents from counsel or that she read about certain allegations in the complaint does not mean her testimony is unreliable. Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; see, e.g., In re Bard IVC Filters Prod. Liab. Litig., No. MDL 15-02641-PHX DGC, 2017 WL 6554163, at *2 (D. Ariz. Dec. 22, 2017) ("Those documents are factual evidence in this case, and experts clearly are permitted to take factual evidence into account."). Notably, however, the complaint should inform Dr. Luna of what the plaintiff alleges; she cannot be made a conduit to parade counsel's unverified assertions before the jury

Of greatest concern to the Court is the lack of information Dr. Luna possesses related to the TIPM at issue. She did not review the report of plaintiff's automotive expert and emphasized she lacked the expertise to address the topic. Nevertheless, she intends to testify as to the problems with the "TIPM" and with the TIPM-7, but she has no expertise to opine as to which version of the TIPM is at issue in this case. Given this, there is no showing how her testimony is relevant if she, herself, can't say that emails from 2007 relate to the TIPM at issue in Mr. Celestrine's vehicle or to some other version of this module. Notably, even if she had done so, the uncontradicted evidence is that Mr. Blasjo does not believe that the problems Mr. Celestine experienced with the truck related to the TIPM-7.

If it is Dr. Luna's intent to summarize emails and other Chrysler documents she read and provide the jury with a roadmap of who said what to whom, this information is only pertinent to the

extent the emails and documents relate to the version of the TIPM-7 installed in Mr. Durham's truck *and only if* there is evidence that the TIPM-7 caused the plaintiff's truck to have suffered a defect that substantially impaired its use, value or safety and which FCA did not repair within a reasonable number of attempts.  Though the plaintiff is correct that Dr. Luna's opinions may be based upon information that is not within her personal knowledge; even still, it must be based upon *knowledge*. For example, though Dr. Luna may testify that FCA knew since 2007 that the TIPM system was defective, she admitted to having no knowledge or expertise to determine whether the TIPM system at issue was the same TIPM system that existed in 2007 or whether it is the TIPM discussed in the emails.  At her deposition, she admitted to not having spoken to the automotive expert on this topic or reviewing his report or his deposition testimony. (Doc. 65 at 39) In doing so, however, it is undisputed that Dr. Luna lacks the expertise to form any conclusions about the mechanics at issue. Id. at 37; See e.g., Base v. FCA US LLC, 2019 WL 1117532, at *8 (N.D. Cal. Mar. 11, 2019) [Dr. Luna not permitted to offer testimony that is not supported by adequate mechanical opinions by the expert.]

In short, it appears many of Dr. Luna's assumptions, which constitute the bases for the conclusions she had formed by the time she wrote her report and sat for her deposition, are based on no evidence at all.  Because her opinions related to the defectiveness of the TIPM system at issue or when the defendant first learned of the defective nature of the TIPM system at issue, are only as good as the evidence upon which they are based, it does not appear that her opinions in this regard would assist the trier of fact.  An expert's obligation is not to form her opinions first and then later be apprised of evidence that may support them; she must first be apprised of the evidence and *then* form her opinions.  She must include all of her opinions and the bases for them in her Rule 26 report and must be prepared to be fully examined on the topics upon which she has opined, including the underpinnings for her opinions.  That did not occur here.

Thus, Dr. Luna may offer no opinion about whether the TIPM-7 system installed in the plaintiff's vehicle was defective, when or whether the defendant knew of any defect in the TIPM-7 system installed in the plaintiff's vehicle, whether documents demonstrate the TIPM-7 system installed in the plaintiff's vehicle was defective or whether the defendant acted in such a way as to mislead the plaintiff or others or whether the defendant fraudulently concealed any purported defect in

8

the TIPM-7 system installed in the plaintiff's vehicle.

Likewise, the Court disagrees that Chrysler's "code of conduct" has any bearing on any liability or damage questions in this case, including the defendant's intent, and, it appears, using it is intended only to inflame the jury. It is excluded under Rule 403.

Finally, the Court cannot presently determine whether there exists any foundation that would allow Dr. Luna to testify about "applicable regulations" (generally, experts are not entitled to opine as to the obligations imposed by law). Either party is free to address whether Dr. Luna's testimony should be precluded entirely according to the Daubert standards or other legal authority at the time of trial, outside the presence of the jury. Accordingly, the motion is **GRANTED in PART**.

**B.     Defendant's motions in limine No. 2 (Doc. 66); No. 3 (Doc. 67) and No. 4 (Doc. 68)**

In its motion in limine No. 2, the defendant seeks to exclude exhibits 101, 103-11, 115-116 and 138. The defendant argues that these documents are National Highway Transportation Safety Administration documents or Technical Service Bulletins for a vehicle other than the 2012 Dodge Durango. The defendant argues the recalls discussed in the NHTSA documents "will not identify any of the alleged defects" of the plaintiff's 2012 Dodge Durango. (Doc. 66 at 3) The defense argues further that the Technical Service Bulletins—which are advisory documents sent to Chrysler dealerships to alert them to potential mechanical issues—did not apply to the 2012 Dodge Durango and there is no evidence the plaintiff's vehicle suffered from any of these complaints. Id.

The defendant also seeks to exclude exhibits 112-113, 117, 119-126, 129 and 139-143 in its motion in limine No. 3. These documents are emails that reference the TIPM-7, though they do not refer either to the 2012 Dodge Durango or problems noted in the 2012 Dodge Durango. The defense also argues that the plaintiff and, presumably, his witnesses lack personal knowledge of the contents of the documents.

Likewise, the defendant's motion in limine No. 4 seeks to exclude exhibits 114,118, 127-128 and 131-137. These exhibits were prepared by nonparties, Continental, NEC/TOKIN and TYCO Electronics.[2] The defense contends the documents do not relate to the 2012 Dodge

---

[2] There appears also to be a dispute also as to whether the agreement entered into in other cases to allow the documents produced in the Velasco class action to be used at trial without an authenticating witness, applies to this case.

9

Durango and "are not relevant to any mechanical issue in Plaintiff's vehicle," and do not demonstrate any prior knowledge by Chrysler of a defect in the TIPM-7. Thus, the defendant contends these documents are irrelevant.

The plaintiff argues that the TIPM-7—which was installed on many makes and models of Chrysler vehicles—suffered from various defects as evidenced by the exhibits at issue. The plaintiff argues that the only differences between the TIPM-7's installed in the 2012 Dodge Durango and those if other cars, is simply the configurations. However, in making this argument, plaintiff ignores the meaning of the recalls that demonstrate that modifications were made to the TIPMs in many different makes and models of cars indicating that, in fact, the TIPM-7's were not the same but for their physical configurations. Moreover, the plaintiff fails to counter that his expert admits that the problems he experienced with his 2012 Dodge Durango was not TIPM-7 related. Rather, he merely notes that TIPM-7's in general have had problems across the various makes and models of cars.

It appears that plaintiff contends that because the TIPM-7 has had problems in other cars, this permits introduction of documents related to any purported manifestation regardless of whether plaintiff's specific vehicle or whether 2012 Dodge Durangos experienced these problems. The Court disagrees. Though the plaintiff has not shown the documents to be relevant, even if they are, they have the significant potential of prejudice to the defense because they would suggest to the jury that the myriad of problems demonstrated by other types of vehicles with a TIPM—even if the TIPM at issue was not the same version as in the plaintiff's vehicle—must mean that liability should be imposed despite the lack of connection between the problems with the TIPM-7 and plaintiff's auto. There is no showing that this "me too" evidence should be allowed here. Evidence concerning problems not experienced by or not directly related to plaintiff's type of vehicle is irrelevant, confusing and unduly prejudicial under Rules 401 and 403 and are excluded. Moreover, the plaintiff presents evidence that the TIPM-7 in his vehicle of in other vehicles of the same make and model is presented to the jury, he must demonstrate the relevance of this evidence. Consequently, the motions are **GRANTED.**

**C.    Defendant's motions in limine No. 5 (Doc. 69)**

The defense seeks to exclude exhibits 22-30 and 33. The defense explains that these pages are

repair records and a recall issued after Mr. Celestine sold his car. (Doc. 69 at 2) FCA argues that the documents are inadmissible because they are irrelevant to the Song-Beverly claims. Id. The plaintiff argues only that the documents are admissible because they demonstrate that the repairs undertaken during the warranty period were ineffective. They assert that "the exact same arguments" offered by the defense here were rejected in Donlen v. Ford Motor Co., 217 Cal.App.4th 138, 144 (2013), as modified on denial of reh'g (July 8, 2013).

In Donlen, the plaintiff took his truck for repair four times during the warranty period. Donlen, at 141-143. A year after the warranty expired and 28 months and 27,000 miles after the last repair, the plaintiff once again took the truck to the dealership for repair complaining about a problem similar to one he had experienced during the warranty period. Id. at 143. The dealership repaired the truck at a cost of $3,000 after which the plaintiff demanded repurchase of the car. Id. When Ford refused, the plaintiff sued.

Before trial, Ford sought to exclude the evidence related to the after-warranty repair, and the trial court denied the motion. Donlen, at 143-144. After the jury found for the plaintiff, the court granted a new trial, finding that the admission of the after-warranty repair was error. Id. at 145-146. The court of appeal disagreed:

> The evidence has a tendency to establish that the transmission was not fully repaired in conformance with the express warranty. Prior to the expiration of the warranty, the transmission was torn out, disassembled, repaired, and reassembled twice. For the nonwarranty repair, the transmission was disassembled a third time, and, as in the last warranty repair, the nonwarranty repair uncovered a deteriorating seal. The evidence is relevant to establishing the transmission was not repaired to match the warranty while the warranty was in effect.

Id. at 149. The court continued,

> Evidence that a problem was fixed for a period of time but reappears at a later date is relevant to determining whether a fundamental problem in the vehicle was ever resolved. [Citation]. . . Postwarranty repair evidence may be admitted on a case-by-case basis where it is relevant to showing the vehicle was not repaired to conform to the warranty during the warranty's existence.

Id., citations omitted. The court rejected Ford's arguments and concluded, "The nonwarranty repair, affecting the transmission for a third time and a worn seal for a second time, tends to show the truck did not conform to the express warranty after the last warranty repair and thus was relevant. Plaintiff was not required to show a closer causal relationship in order for the evidence to survive an objection

11

based on relevance." Id.

The defense reports that the recall at issue related to the fuel pump. The plaintiff's expert testified[3] that the problems the plaintiff noted during his ownership of the car "didn't relate" to the fuel pump recall. (Doc. 69 at 6) Neither side explains what repairs were made by the subsequent owner, but the plaintiff argues they are causally connected to those made during the warranty period. Thus, the Court **GRANTS** the motion as it relates to the recall but **DENIES** it as it relates to the subsequent repairs. If the post-warranty repairs are causally related, the documents are relevant to whether the repairs made during the warranty period made the vehicle conform to the warranty.

IT IS SO ORDERED.

Dated: **June 26, 2019**              **/s/ Jennifer L. Thurston**
                                      UNITED STATES MAGISTRATE JUDGE

---

[3] The expert also testified that his opinions were not based upon the post-warranty repairs. (Doc. 69 at 6)

12