1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10

11    LARRY CELESTINE,                    )    Case No.: 2:17-cv-0597 - JLT
                                          )
12              Plaintiff,                )    ORDER GRANTING IN PART PLAINTIFF'S
                                          )    MOTION FOR ATTORNEY FEES AND COSTS
13         v.                             )
                                          )    (Doc. 101)
14    FCA US LLC, et al.,                 )
                                          )
15              Defendants.               )
                                          )
16    _____)

17         Larry Celestine asserts that FCA US LLC is liable for violations of the Song-Beverly act and

18    fraudulent inducement under California law. The parties settled the underlying claims, and Plaintiff

19    now seeks an award of attorney fees and costs.  (Doc. 101)  For the reasons set forth below, Plaintiff's

20    motion is **GRANTED** in part, in the modified amount of $22,585.35.

21    **I.      Background**

22         Plaintiff purchased a new 2012 Dodge Durango on April 12, 2012.  (Doc. 1-1 at 4, ¶ 9)

23    According to Plaintiff, the vehicle "was delivered to [him] with serious defects and nonconformities to

24    warranty[,] and developed other serious defects and nonconformities to warrant including, but not

25    limited to a defective [Totally Integrated Power Module]." (*Id.* at 23, ¶ 130)

26         Plaintiff reports his vehicle "was factory-equipped" by Defendant with the Totally Integrated

27    Power Module ("TIPM"), which "is the chief component in the … power distribution systems and

28    consists of a computer, relays, fuses, and controls." (Doc. 1-1 at 4, ¶¶ 12-13)  According to Plaintiff,

"The TIPM provides the primary means of voltage distribution and protection for the entire vehicle..." (*Id.*, ¶ 13) Electrical systems receiving power from the TIPM included the vehicle's "safety systems, security system, ignition system, fuel system, electrical powertrain, and … comfort and convenience systems." (*Id.*, ¶ 14)

Plaintiff contends the TIPM installed in his vehicle was faulty and failed "to reliably control and distribute power to various vehicle electrical systems and component parts," which caused the "check engine line [to] come[] on frequently" and "[i]rregular coolant loss." (Doc. 1-1 at 4-5, ¶¶ 15-16) In addition, Plaintiff alleges the TIPM "is likely to cause a variety of electrical issues such as a loss of headlight function, and unexpected distractions, such as the vehicle's horn or alarm sounding while on a roadway, which may increase the risk of injury for the driver, passengers, or others on the roadway." (*Id.* at 5, ¶ 17)

According to Plaintiff, "FCA US LLC had superior and exclusive knowledge of the TIPM defects, and knew or should have known that the defects were not known by or reasonably discovered by Plaintiff before [he] purchased or leased the Vehicle." (Doc. 1-1 at 5, ¶ 19) Plaintiff reports: "FCA US LLC vehicles have been plagued with severe TIPM problems for the last decade. As a result, FCA US LLC has initiated multiple TIPM-related recalls to address safety or emissions concerns." (*Id.*, ¶ 21) Further, Plaintiff asserts the TIPM "defect is so widespread that… replacement parts have often been on national backorder, with drivers reporting from 2011 to 2014 that they had to wait weeks or months of have their TIPMs replaced." (*Id.* at 6, ¶ 23) She alleges FCA UC LLC dealers and auto-technicians "advis[ed] many drivers to not drive their vehicles until the TIPM [was] replaced, due to safety risks." (*Id.*) However, Defendant did not disclose the defect "prior to the sale of the Subject Vehicle to Plaintiff." (*Id.* at 19, ¶ 106)

In October 2015, "Plaintiff received a letter in the mail from the settlement administrator in a class action lawsuit informing Plaintiff that [he] was a member of a class of individuals for which a 'class action settlement involving the Totally Integrated Power Module (TIPM)' had been reached." (Doc. 1-1 at 18, ¶ 106) The letter informed him that the plaintiff in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13-cv-08080-DDP-VBK (C.D. Cal) claimed the TIPM "installed in model-years 2011, 2012, and 2013 Dodge Durango and Jeep Grand Cherokee vehicles is defective and poses a

safety hazard." (*Id.* at 18-19, ¶ 106)  Plaintiff contends "[t]his was the earliest date that FCA US LLC made any attempt to notify [him] of any of the known defects in the TIPM7." (*Id.* at 19, ¶ 106) Plaintiff "opted out of the class action settlement in *Velasco* and filed the instant action to pursue his individual rights." (*Id.* at 22, ¶ 125)

On November 22, 2016, Plaintiff filed a complaint in San Joaquin County Superior Court, Case Number STR-CV-IBC-2016-11864. (*See* Doc. 1-1 at 2)  Plaintiff identified the following causes of action in his complaint: (1) breach of an express warranty pursuant to the Song-Beverly Act, (2) breach of an implied warranty pursuant to the Song-Beverly Act, and (3) fraudulent inducement.  (*Id.* at 2, 23-28)  Plaintiff's prayer for relief included, but was not limited to: general, special and actual damages; "recession of the purchase contract and restitution of all monies expended;" diminution in value; civil penalties totaling two times his actual damages, and reasonable attorney fees and costs.  (*See id.* at 28) Defendant filed its answer on December 29, 2016.  (Doc. 1-4)

On March 30, 2017, Defendant filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446(a), thereby initiating the matter with this court.  (Doc. 1)  Plaintiff filed a motion to remand the action to the state court on June 5, 2017.  (Doc. 5)  The Court determined it had diversity jurisdiction over the action and denied the motion to remand on August 4, 2017.  (Doc. 15)

The Court held a status conference to set a trial date with the parties on December 11, 2018. (Doc. 48) The pretrial conference was set for May 28, 2019, and the jury trial was set for July 15, 2019. (Doc. 49)

On May 28, 2019, the Court held the pretrial conference.  (Doc. 54)  The Court ordered the parties to file any motions in limine no later than June 14, 2019; and to submit any trial exhibits no later than July 12, 2019.  (*Id.* at 1)  In addition, the jury trial was confirmed for July 15, 2019.  (*Id.*) Pursuant to the deadlines ordered, the parties filed motions in limine on June 14, 2019, which the Court addressed by written order on June 26, 2019.  (Doc. 78)  On July 2, 2019, the Court issued an order on courtroom decorum while in trial.  (Doc. 79)

On July 15, 2019, the parties failed to appear for the scheduled jury trial.  Only after the Court placed a phone call to Plaintiff's counsel was the Court advised for the first time that the case settled on July 1, 2019.  Therefore, the Court thanked and discharged the entire panel of potential jurors that had

appeared for service. The same date, the Court issued an order to all counsel of record and the parties to appear and show cause why sanctions should not be imposed "for the fees and expenses of summoning a jury, for the costs and expenses of extra court staff being on hand for the jury trial of this action, for the waste of judicial resources this conduct imposed and for their failure to comply with the Court's Local Rules." (Doc. 81 at 2)

The parties filed a response to the order to show cause on July 19, 2019, again indicating the action had settled on July 1, 2019.[1] (Doc. 83 at 2) According to the parties, "Plaintiff emailed a draft joint notice of settlement for Defendant's review and signature prior to filing with the Court" on July 12, 2019, but "[t]rial counsels for Defendants, Jeanette C. Suarez and Jeffery Fadeff, were not included in the July 12, 2019 email." (*Id.*)

The Court held its hearing to show cause on August 2, 2019. (Doc. 96) Plaintiff's counsel Larry Castruita, Daniel Kalinowski and Maite Colon appeared. Defendant's counsel Jeanette Suarez, Kristi Livedalen, Jeffery Fadeff, Scott Shepardson, and Jennifer Kuenster and Tina Dietrich were also present. Plaintiff and several of his attorneys of record, including Steve Mikhov, Russell Higgins, Sepehr Daghighian and Erik Schmitt, failed to appear. A civil contempt hearing has been set for September 16, 2019. (Doc. 99)

On August 12, 2019, Plaintiff filed a motion for attorney fees and a bill of costs. (Docs. 100, 101) Defendant filed its objections to the bill of costs on August 19, 2019 (Doc. 102) and its opposition to the motion for fees on August 27, 2019 (Doc. 105). Plaintiff filed his brief in reply on September 3, 2019. (Doc. 106)

## II.     Legal Standard

In a diversity case, such as the matter before the Court, "the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees,

---

[1] Despite counsel's prior representations to the Court regarding the date the action settled, the billing records indicate Plaintiff executed his acceptance of the Rule 68 offer on June 28, 2019. (Doc. 101-2 at 24)

but also in the method of calculating the fees").

As explained by the Supreme Court, "[u]nder the American Rule, 'the prevailing litigant ordinarily is not entitled to collect a reasonable attorneys' fee from the loser.'" *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co*., 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)). However, a statute allocating fees to a prevailing party can overcome this general rule. *Id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co*., 386 U.S. 714, 717 (1967)). Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).

The Song-Beverly Act "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor America*, 31 Cal.App.4th 99, 104 (1994). The court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Id.* If the court finds the time expended or fee request "is not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Id.* "A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" *Id.* (quoting *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992)); *see also Goglin v. BMW of North America, LLC,* 4 Cal. App. 5th 462, 470 (2016) (same).

If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc*., 163 Cal. App. 4th at 550, 564 (2008). Rather, the opposing party has the burden to demonstrate the hours spent are duplicative or excessive. *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

**III.    Evidentiary Objections**

Both parties object to evidence presented in support of and in opposition to the motion for fees and costs.  (Doc. 105-1; Doc. 106-2)  The Court has read and considered each objection made by Defendant and Plaintiff, and to the extent the Court considers any evidence to which there was an objection in its analysis, the objection is overruled.

**IV.    Discussion and Analysis**

As a prevailing buyer, Plaintiff is entitled to an award of fees and costs under the Song-Beverly Act.  *See* Cal. Civ. Code § 1794(d); *see also Goglin,* 4 Cal.App.5th at 470.  Plaintiff seeks: (1) an award of attorneys' fees pursuant to the Song-Beverly Act in the amount of $58,103.75; (2) a lodestar multiplier of 0.5, in the amount of $29,051.88; and (3) actual costs and expenses of $9,946.67.  (Doc. 101 at 2)  Thus, Plaintiff seeks a total award of $97,102.30.  (*Id.*)  Defendant acknowledges that "Plaintiff is entitled to recover attorney's fees, costs, and expenses ... as the prevailing party," but argues the fee request "should be denied as unreasonably incurred."  (*See* Doc. 105 at 6)

**A.    Fee Request**

Plaintiff seeks lodestar amounts of $25,375.00 for the work completed by Knight Law Group and $32,728.75 for work completed by Hackler Daghighian Martino & Novak, P.C., which was associated into the case as trial counsel.  (Doc. 101-1 at 11-12 )

**1.    Hours worked by counsel**

A fee applicant must provide time records documenting the tasks completed and the amount of time spent.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).  Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable.  *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)).  Thus, evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended."  *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008).  The court must exclude "duplicative or excessive" time from its fee award.  *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 161 (2006); *see also Ketchum*, 24 Cal.4th at 1132 ("inefficient or

duplicative efforts [are] not subject to compensation").

Defendant objects to the hours reported, asserting "Plaintiff failed to offer any explanation ... for why it took two firms who claim to be experts in their field to handle this routine case." (Doc. 105 at 7) According to Defendant, much of Knight Law Group's ... collective knowledge was wasted when it handed the case off to Hackler Daghighian Martino & Novak ("HDMN") for trial purposes." (*Id.* at 8) Further, Defendant objects to many "billing entries that reflect excessive rates and/or time" by Knight Law Group and HDMN. (*Id.* at 8; *see also id.* at 8-13)

### a.    Work completed by Knight Law Group

The billing records submitted by Knight Law Group indicate the attorneys have expended 70.7 hours on this action, through the preparation of the motion for fees and costs. (Doc. 101-2 at 18-26) Defendant objects to the hours reported by Knight Law Group and contends there are "numerous… examples of billing entries that reflect excessive rates and/or time." (Doc. 105 at 8)

### i.    *Initial case communications*

Defendant objects to the first three entries in the billing records, for "[i]nitial communication with client and evaluation of client's claims," analyzing the vehicle documentation, and communication with [Plaintiff]" by Mr. Mikhov, who reported a total of 2.2 hours for these tasks. (Doc. 101-2 at 19) Defendant argues: "These entries are undated, making their validity questionable. There is no evidence that a fee agreement was even in place when these tasks occurred." (Doc. 105 at 8)

Significantly, the challenged entries are the only entries related to the initial contact with Plaintiff and review of her documentation. (*See* Doc. 101-2 at 19) Presumably, such contact and review had to occur or there would be no case. Because counsel identified the tasks performed and the time to do so was reasonable, the Court declines to reduce the fee award based upon the failure to identify the date the tasks were performed.

### ii.    *Clerical tasks*

The Supreme Court determined that "purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). As a result, courts have eliminated clerical tasks from fee awards. *See, e.g., Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th

Cir. 1997) (approving the court's elimination of hours spent on secretarial tasks from the lodestar calculation).

Defendant objects to the 0.2 hour reported by Russell Higgins to draft "Notice[s] of Change of Counsel" on January 13, 2017, and December 5, 2017. (Doc. 105 at 8-9; *see also* Doc. 101-2 at 19, 21) Defendant argues the drafting of such a document "is a clerical task and should be disallowed." (Doc. 105 at 9) However, the preparation of the "Notice of Change of Counsel" was not a purely clerical task because counsel has an obligation to inform the Court when there are changes in the attorneys of record and the designations of counsel for service. *See* Local Rule 182. Further, Mr. Russell billed minimal time for the documents' preparation at 0.1 hour each. (Doc. 101-2 at 19, 21) Thus, the Court declines to reduce the fee award for Mr. Higgins on these grounds.

In addition, Defendant objects to the 0.1 hour reported by Kristina Stephenson-Cheang "for reviewing the Notice of Appearance of 'Kristi Levitan'" on July 3, 2017. (Doc. 105 at 9) According to Defendant, "No attorney by that name has appeared in this case" and "this is at best an administrative task that should not have taken more than ten seconds." (*Id.*) A review of the Court's docket indicates Plaintiff's counsel merely made a typographical error in the billing records, as Kristi Livedalen filed the "Notice of Appearance" on behalf of FCA US LLC on July 3, 2017. (Doc. 11) Because counsel should stay informed as to the attorneys of record in an action and Ms. Stephenson-Cheang billed minimal time for her review of the document, the Court declines to reduce the fee award on these grounds.

Finally, Defendant objects to the 0.6 hour billed by Steve Mikhov to "[r]eview and audit billing" on August 7, 2019, asserting it was "administrative time that should not be passed on [to] Defendant." (Doc. 105 at 10; Doc. 101-2 at 24) As Defendant observes, this task is clerical in nature, and the Court will deduct the 0.6 hour from the lodestar calculation for Mr. Mikhov.

### iii. Internal communications and review

As noted above, a fee applicant "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). However, in general, counsel should not

bill for internal communications and communicating with each other, as such time is unnecessary. *See, e.g., In re Mullins*, 84 F.3d 459, 467 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010).

As this Court previously observed, "many courts have ... reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) (citing, *e.g., Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal 2003) [reducing selected time entries because attorneys "billed an inordinate amount of time for interoffice conferences"]; *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan.4, 2007) ["communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate"])  Notably, the Court's review of the billing records from Knight Law Group reveals a significant amount of time spent on the preparation of internal memorandums and summaries for co-counsel.

For example, Alistair Hamblin attended the hearing on the motion to remand and then drafted the "results" of the hearing on August 1, 2017—prior to the Court issuing its written ruling on August 4, 2017—and his summary of the "results" was then reviewed by Steve Mikhov.  (Doc. 101-2 at 20)  Mr. Mikhov also billed for reviewing the "results" summarized and prepared by other attorneys at Knight Law Group following the initial scheduling conference and the settlement conference.  (*Id.* at 20, 22)  Likewise attorneys prepared, and reviewed, memorandums and summaries regarding the depositions of Plaintiff, Richard Schmidt, Barbara Luna, and Darrell Blasjo.  (Doc. 101-2 at 22-23)  Notably, summaries of the deposition frequently followed memorandums prepared by others.  For example, after attending Plaintiff's deposition, Diane Hernandez prepared a memorandum regarding the deposition on February 12, 2018, and the memorandum was reviewed the following day by Ms. Stephenson-Cheang, who then reviewed the transcript and drafted her own summary on March 12, 2018. (Doc. 101-2 at 22)

Because the preparation and review of these documents were clearly internal communications and duplicative in nature, the Court will reduce the lodestar by a total of 5.9 hours. *See Gauchat-Hargis*,2013 WL 4828594 at *3; *In re Durosette*, 2012 WL 9123382 at *3 (E.D. Cal. Aug. 23, 2012) (finding a reduction of time appropriate in part due to the amount of time reported for "preparing

memos to the lead partner on the case"). This amount includes deductions of 1.1 hour for Mr. Mikhov and 4.8 hours by Ms. Stephenson-Cheang.

### iv.     Duplicative billing

As Defendant observes, "there is a duplicate entry for Russell Higgins" on April 30, 2018, for drafting the Notice of Deposition of Richard Schmidt. (Doc. 105 at 9; *see also* Doc. 101-2 at 23)  Thus, the lodestar calculation will be reduced by 0.1 hour for Mr. Higgins due to the duplicative billing.

### v.     Excessive time

Defendant objects to the 4.4 hours reported by Alastair Hamblin for drafting interrogatories, requests for admission, requests for production of documents, and revising a letter to the defendant regarding Plaintiff's discovery requests.  (Doc. 105 at 9; Doc. 101-2 at 20-21)  According to Defendant, the reported time is excessive "[b]ecause this work largely involved adapting existing templates" and the requests were "the same discovery requests Plaintiff's counsel propound in every lemon law [action] they bring against Defendant FCA US." (*Id.*)  However, there is no evidence before the Court supporting the assertion that the discovery requests were the same or simple templates that Mr. Hamblin adapted for this action.  Thus, the Court declines to reduce the time as excessive.

On the other hand, the Court's review of the billing records reveals an excessive amount of time was reported by Mr. Higgins related to the scheduling conference held on August 22, 2017.  Mr. Higgins billed 1.7 hours to "[p]repare for and attend [the] Initial Scheduling Conference (telephonically)" and "draft results." (Doc. 101-2 at 20)  According to the Court's records, the Scheduling Conference lasted only 7 minutes, from 9:00 a.m. to 9:07 a.m.  In addition, the preparation required is unclear, as the parties previously submitted a joint report addressing the claims presented, anticipated discovery, and proposed deadlines.  (*See* Doc. 10)  Assuming Mr. Higgins was required to review this document to prepare, it should not have taken more than 15 minutes.  Likewise, it is unclear what "results" he summarized, though presumably it was merely a list of the deadlines ordered during the seven-minute conference, to be reviewed by Mr. Mikhov.  (*See* Doc. 10-2 at 20)  Because the time reported was clearly excessive, the Court reduces Mr. Higgins' time by 1.2 hours.

### vi.     Tasks related to the motion to remand

According to Defendant, Plaintiff should not recover fees related to the motion to remand,

which challenged this Court's diversity jurisdiction on the grounds that the parties were not diverse and the amount in controversy requirement of $75,000.00 was not satisfied. The Court rejected both arguments and denied the motion on August 4, 2017. (Doc. 15) Defendant argues that "[b]ecause this motion was denied, it is unreasonable to pass these fees onto Defendant." (Doc. 105 at 8-9)

Plaintiff's reply is silent as to the challenge made by Defendant regarding an award for the time related to the motion to remand, and he makes no affirmative argument as to the reasonableness of these hours in the initial motion. [2] (*See generally* Doc. 106) The Court is unable to find the time related to drafting the motion, reviewing the opposition, and attending the hearing was reasonably expended by counsel. Accordingly, the lodestar calculation below will be reduced by 6.0 hours for Mr. Hamblin. (*See* Doc. 101-2 at 20)

### vii. Travel

Defendant objects to the time reported by Diane Hernandez, noting that she billed 9.0 hours for attending Plaintiff's deposition, which "lasted a little over one hour." (Doc. 105 at 9; *see also* Doc. 101-2 at 22) Ms Hernandez noted that her reported time had "travel included." (Doc. 101-2 at 22) Thus, it appears the travel time for Ms. Hernandez totaled approximately 8.0 hours.

Notably, courts have frequently reduced travel time by half to create a reasonable rate. *See, e.g.*, *In re Washington Public Power Supply Sys. Sec. Lit.*, 19 F.3d 1291, 1298 - 99 (9th Cir. 1994) (finding the district court did not err in reducing attorney travel time by half where the "attorneys generally billed the entire duration of the time spent in transit"); *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (affirming a reduction by half of the hourly rate for time billed for travel); *S. Yuba River Citizens League & Friends of the River v. Nat'l Marine Fisheries*, 2012 WL 1038131, at *5 (E.D. Cal. Mar. 27, 2012) (finding the attorney travel time was "subject to a 50% reduction"); *Wishtoyo Found. v. United Water Conservation Dist.*, 2019 U.S. Dist. LEXIS 39927 (C.D. Cal. Mar. 5, 2019). Accordingly, the Court finds the travel time for Ms. Hernandez is subject to a fifty-percent reduction, and the lodestar calculation below reflects a deduction of 4.0 hours.

---

[2] In addition, the Court notes that nearly the identical motion was filed in Salinas case (*Salinas v. FCA*, case number 1:17-cv-00419) and it was denied for the same reasons as here. It is simply not possible that the motion in this case could have necessitated spending 6 hours when it amounted to little more than cutting and pasting from the previous filing.

Defendant objects to the billing entries for counsel's work related to the Court's Order to Show Cause as to why sanctions should not be imposed for the parties' failure to inform the Court regarding the settlement.  (Doc. 105)  Plaintiff offers no explanation as to the belief that billing for actions taken in their efforts to avoid sanctions is reasonable.  (*See generally* Doc. 106)  Indeed, the Court is unable to find the award of such fees would be appropriate.

The Court will reduce the lodestar award for all tasks performed related to the Order to Show Cause, including the communications with Plaintiff following the Court's order and immediately prior to the sanctions hearing, for a total reduction of 13.9 hours.  (*See* Doc. 101-2 at 24)  This includes 0.1 hour for Ms. Stephenson-Cheang's review of the order; 10.0 hours for Maite Colon for preparation of the joint statement in response to the order, conferences with Plaintiff, and attending the hearing; and 0.2 hour for Mr. Mikhov's review of the "hearing results."

### b.      Work completed by Hackler Daghighian Martino & Novak, P.C.

As noted above, Knight Law Group associated Hackler Daghighian Martino & Novak, P.C. ("HDMN") into the action "to prepare the case for trial."  (Doc. 101-1 at 9)  Defendant objects to the hours billed by HDMN as unreasonable, asserting the firm included duplicative tasks, clerical tasks, and overbilled with quarter-hour increments.  (Doc. 105 at 8, 11-13)

### i.      Clerical tasks

Review of the time sheets from HDMN reveals tasks that were purely clerical and should be excluded from the lodestar calculation.  *See Missouri,* 491 U.S. at 288 n. 10.  Specifically, Andrea Plata, a paralegal, recorded 2.0 hours for tasks including printing and saving documents, calendaring deadlines, and reviewing the documents and discovery previously received by Knight Law Group to prepare a trial folder.  (*See* Doc. 101-3 at 9)

Courts have discounted paralegal billing entries for "clerical tasks" such as "filing, transcript, and document organization time."  *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the court's elimination of hours spent on secretarial tasks from the lodestar calculation); *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court

documents or copying"). Thus, 2.0 hours expended by Ms. Plata on the clerical—and duplicative—tasks will be deducted from the lodestar.

### ii. Excessive time

Defendant contends Larry Castruita billed an excessive amount of time for his work on this action, in particular related to preparation of the pretrial statement on November 16, 2018; and drafting an amended witness list on May 31, 2019. (Doc. 105 at 11) According to Defendant, the pretrial statement was "largely a boilerplate document[]," and it should not have taken 5.5 hours to prepare Plaintiff's version. (*Id.*) Notably, however, there is no evidence before the Court regarding a template format of the document, which was 50 pages long, including the exhibit list of over 200 exhibits that were identified as either joint or from Plaintiff alone. (*See* Docs. 46, 46-1) Thus, the Court declines to reduce the requested time related to the pretrial statement as excessive.

In addition, Defendant argues that Plaintiff should not recover fees related to the drafting of the amended witness list, because Plaintiff's counsel was "ordered... to redo the document because they failed to identify the witnesses by name, per the Court's order." (*Id.* at 11-12) As Defendant observes, the Court ordered Plaintiff to file a supplemental witness list that identified Premier Chrysler Jeep Dodge Ram's Person Most Qualified by name, and indicated the failure to do so would result in the witness being excluded. (Doc. 54 at 9) This was the second time Plaintiff's counsel failed to identify a witness by name, and counsel had no explanation as to why the witness' name was not included as the witness had been deposed. (*See* Doc. 54 at 9, n.1) Given counsel's initial failure to identify the witnesses by name as required by Local Rule 281(b)(10), the Court finds no time should be awarded for the preparation of the amended witness list. Accordingly, 1.75 hours will be deducted from the lodestar calculation below for Mr. Castruita.

### iii. Travel

Mr. Castruita traveled from Los Angeles to Bakersfield to attend the pretrial conference held on May 31, 2019. (Doc. 101-3 at 11) In the billing records, Mr. Castruita indicated he departed Los Angeles at 7:00 a.m. and arrived in Bakersfield at 9:10 a.m., for the hearing that began at 10:00 a.m. (*Id.*) In addition, the records indicate he left the court at 10:30 a.m. and arrived back in Los Angeles at 2:00 p.m. (*Id.*) In total, Mr. Castruita billed 7.0 hours for the travel and hearing. Defendant contends

that "[b]ecause Mr. Castruita could have appeared telephonically (as Defendant's counsel did), the charge... associated with this time was reasonably avoidable and should be disallowed." (Doc. 105 at 11)  In the alternative, Defendant contends "the charge should be substantially reduced to reflect its true value." (*Id.*)

As discussed below, courts have frequently reduced travel time by half to create a reasonable rate.  *See, In re Washington Public Power Supply Sys. Sec. Lit.*, 19 F.3d at 1298-99; *Watkins*, 7 F.3d at 459.  Because Mr. Castruita indicates he spent only 30 minutes of the 7.0 hours at the hearing, the records imply that he expended 6.5 hours in travel.  The Court finds this is subject to a fifty percent reduction, and 3.25 hours will be reduced from the lodestar calculation for Mr. Castruita's travel.

### iv.    Unnecessary appearance

Counsel's billing records include 0.75 hour for Mr. Castruita to appear at a hearing on the motions in limine on July 1, 2019.  (Doc. 101-3 at 12)  Defendant objects to this time because the hearing was previously vacated by the Court, asserting "Defendant should not pay for Plaintiff's counsel's lack of awareness of a court order."  (*Id.*) The Court agrees.

On June 26, 2019, the Court issued its order on the motions in limine and vacated the hearing.  (Doc. 78)  Mr. Castruita received electronic service of the Court's order vacating the hearing date.  In addition, a simple check of either the docket or the Court's calendar would have indicated the hearing date was vacated at the time the Court issued its rulings on the motion.  There is no reasonable explanation why counsel not only called in for a hearing that had been vacated, but also billed 0.75 hour for this appearance.  Accordingly, the Court will deduct 0.75 hour from the requested fee award for Mr. Castruita.

### v.    Trial preparation

Defendant objects to several entries related to trial preparation by Mr. Castruita, including meetings related to a Rule 50 motion and drafting the trial brief, jury instruction, proposed void dire questions, opening statement graphic, and timeline.  (Doc. 105 at 11-12)  Although the trial never occurred in this action, the Court is unable to find that anticipation of a Rule 50 motion and strategy meetings were unreasonable.  Thus, Defendant's objections to these entries are overruled.

On the other hand, as Defendant notes, Mr. Castruita reports spending 9.75 hours for trial

preparation on June 27, 2019—the same date that Knight Law Group accepted Defendant's settlement offer.  (*See* Doc. 101-3 at 12; Doc. 101-2 at 24)  Significantly, the Court's review of the billing records indicates that Mr. Mikhov reviewed the offer on June 25, 2019, and talked with Plaintiff the following day.  (Doc. 101-2 at 24)  On June 26, Amy Morse also communicated with Plaintiff.  (*Id.*)  Ms. Morse signed the acceptance on June 27, and no attorney or professional staff member communicated with Plaintiff that day. (*Id.*)  Thus, it is clear there was a meeting of the minds as to the settlement the day before, on June 26, 2019, yet Knight Law Group failed to communicate to their associated trial counsel that the trial would not occur due to Plaintiff's acceptance of the offer.  Defendant should not be forced to bear the fees related to the lack of timely communication between Knight Law Group and HDMN.  Because the action had settled, the Court finds the time expended in trial preparation on June 27, 2019 was unreasonable, and 9.75 hours are deducted from Mr. Castruita's time.

### vi.     Unsupported and anticipated time

Defendant argues the Court should not award the 11.5 hours of anticipated time included in the billing records reviewing the opposition, drafting the reply brief, and attending the hearing on the motion for fees and costs.  (Doc. 105 at 12; *see also* doc. 101-3 at 13)

Significantly, Plaintiff failed to provide any evidence with the Reply related to the time actually spent reviewing the opposition and drafting the brief, despite the numerous other exhibits attached to the declarations of Mr. Mikhov.  (*See generally* Doc. 106, 106-2)  In addition, the motion was taken under submission without oral arguments on September 6, 2019.  The Court declines to speculate as to the actual time spent by counsel in preparing the reply brief, as it is the fee applicant's burden to present evidence to support a motion.  *See Hensley*, 461 U.S. at 424; *Welch*, 480 F.3d at 945-46.  Accordingly, the lodestar calculation below reflects a reduction of 6.5 hours for Lauren Martin related to the reply and 5.0 hours for Mr. Daghighian's anticipated appearance at the vacated hearing.

### vii.     Quarter-hour billing

HDMN billed in quarter-hour increments, which Defendant argues warrants a deduction in the fee award because "Plaintiff offers no evidence whatsoever that such practice is reasonable."  (Doc. 105 at 12) In addition, Defendant observes that Plaintiff fails to show "such billing practices are accepted in the industry as standard, and the practice "has been criticized because it inflates time spent on the

matter." (*Id.* at 13, citing *e.g., Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010))

As Defendant argues, courts have repeatedly criticized quarter-hour billing because it inflates time spent on the matter. *See, e.g., Welch*, 480 F.3d at 949 (affirming a reduction after finding the billing practice inflated the time recorded); *Robinson*, 717 F. Supp. 2d at 1100-01 (applying a 20% reduction for billing in quarter-hour increments); *Prudential Ins. Co. v. Am. v. Remington*, 2014 WL 294989 at *4 (E.D. Cal. Jan. 24, 2014) (also applying a 20% reduction where counsel billed in 15-minute increments); *Ekstrom v. Marquesa at Monarch Beach Homeowners Assoc.*, 2008 WL 4768861 (Cal. App. 4th. Nov. 3, 2008) (finding the trial court did not err in decreasing the fees requested by 40% where the attorneys billed in quarter-hour increments).

In *Welch*, the district court "imposed a 20 percent across-the-board reduction on [the] requested hours" because the law firm "billed in quarter-hour increments." *Id.*, 480 F.3d at 948. The district concluded the "practice of billing by the quarter-hour resulted in a request for excessive hours . . . because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit also reviewed the time sheets, and noted: "Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intraoffice conferences." *Id.* Therefore, the Court affirmed the reduction for quarter-hour billing. *Id.*

HDMN billed a quarter-hour for preparation of the Magistrate Judge Consent form on November 19, 2018. (Doc. 101-3 at 10) However, this appears excessive because Plaintiff used the form supplied by this Court and limited preparation of the consent form was required. (*See* Doc. 42 at 1) This single page, check-the-box document could not possibly take more than minutes to complete. *See Calderon v. Astrue*, 2010 WL 4295583 at *5 (E.D. Cal. Oct. 22, 2010) (observing the consent form is a "simple, check-the-box type form[] that require[s] little time and effort to complete and file," and awarding only 0.1 hour for its completion). Further, the Court notes Mr. Castruita billed 0.50 hour for the time he appeared at the pre-trial conference on May 28, 2019, indicating the hearing began at 10:00 a.m. and he left the courthouse at 10:30 a.m. (Doc. 101-3 at 11) However, the Court's own records indicate the conference ended at 10:12 a.m., yet Mr. Castruita rounded the hearing time up to

30 minutes.  This also indicates the reported time was inflated the firm's practice of billing a minimum of a quarter-hour.

Consequently, the remaining time reported by the attorneys HDMN is reduced by 20% for purposes of the lodestar calculation, resulting in a compensable total of 4.2 hours for Sepher Daghighian, 37.2 hours for Larry Castruita, and 6.2 hours for Lauren Martin.  The Court finds this time reasonable for the tasks undertaken by each of the attorneys.

### 2. Hourly rates

The Supreme Court determined attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("[t]he reasonable hourly rate is that prevailing in the community for similar work").  The fee applicant has the burden to establish the rates are reasonable with the community, and meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11

In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008).  Thus, for example, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011); *see also Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014) (in a diversity action awarding fees under the Song-Beverly Act, the court looked to hourly rates in the Fresno Division, and adjusted the lodestar accordingly).  However, this action was initiated by Defendant's removal to the Sacramento Division, and was transferred to the Fresno Division.  When an action is properly initiated in one district and is transferred to a different forum, counsel should be compensated at the prevailing rate of the initial forum.  *See Polk v. NY State Dep't of Corr. Services,* 722 F.2d 23, 25 (2d Cir. 1983).  Thus, the Court finds the relevant community for the purpose of determining the local hourly rate is the Sacramento Division.  However, as discussed below, the Sacramento Division and Fresno Division award

comparable rates. *See Fitzgerald v. Law Office of Curtis O. Barnes*, 2013 WL 1627740, n.5 (E.D. Cal. Apr. 15, 2013) (observing that "[c]ases from this Court's Sacramento Division largely mirror the rate determinations from the Fresno Division").

The court may apply "rates from outside the forum… 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Plaintiff presents no evidence that local counsel was either unwilling or unable to prosecute her claims in this action. Thus, the Court must determine whether the hourly rates requested by counsel are reasonable for the Sacramento Division of the Eastern District. *See, e.g., Gordillo*, 2014 WL 2801243 at *5-6; *AT&T Mobility LLC v. Yeager*, 2018 WL 1567819 at *4-5 (E.D. Cal. Mar. 30, 2018).

The attorneys at Knight Law Group seek hourly rates ranging from $275 to $550, while attorneys at HDMN seek hourly rates ranging from $250 to $550. (Doc. 101-2 at 24; Doc. 101-3 at 9) In support of counsel's lodestar calculation and the fee request based upon these hourly rates, Plaintiff requests the Court review:

> (i) the hourly rates set forth of in the declarations filed … (SM Dec., ¶¶ 18-28; SD Dec., ¶¶ 3-6), (ii) a survey of rates charged by other well known consumer law attorneys (SM Dec., ¶ 31), (iii) over three dozen court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases (SM Dec., ¶¶ 32-43, Exs. D-O), and (iv) a National Survey further supporting the reasonableness of the hourly rates. (SD Dec., ¶ 8, Ex. B, at pp. 42-45.)

(Doc. 101-1 at 14) However, this evidence does not address the local forum or assist the Court in its analysis. For example, while Mr. Mikhov reports "the hourly rates of other attorneys in California who work in the area of lemon law and consumer law," he does not identify attorneys practicing in the Eastern District. (*See* Doc. 101-2 at 9-10, ¶ 31)

Further, though Mr. Mikhov identifies cases in which the attorneys were awarded fees from state courts within the Eastern District boundaries—including Fresno County, Merced County, and Tulare County—many of the courts' orders adopted the proposed orders and offered no analysis regarding whether the hourly rates were reasonable for local counsel. (*See, e.g.* Doc. 101-2 at 69-70, 74-75, 79-80, 74-75, 92-93, 98-99) Without such analysis, the Court is unable to determine whether

the plaintiffs presented evidence that local counsel was either unwilling to take their cases or unable to do so, such that the higher hourly rate was warranted. Given the lack of such evidence here, the hourly rates will be reduced for purposes of calculating the lodestar. *See Gordillo*, 2014 WL 2801243 at *5-6; *Barjon v. Dalton,* 132 F.3d 496, 500-02 (9th Cir. 1997) (affirming the court's decision to decline an award of out-of-district billing rates where the fee applicant failed "to prove the unavailability of local counsel," and reduced the award to the hourly rates in the relevant community). Indeed, the requested hourly rates were from Knight Law Group were rejected in *Metzger vs. FCA US LLC* (Fresno County Superior Court Case No. 16CECG02922), which is attached as Exhibit G to the motion; and Mr. Mikhov acknowledges the court only "awarded 85% of [the] requested lodestar fees." (Doc. 101-2 at 86; *see also* Doc. 101-2 at 12, Mikhov Decl. ¶ 35)

Notably, whether the Court applies hourly rates for the Sacramento Division or the Fresno Division, the requested rates exceed those generally found reasonable in the Eastern District. *See Fitzgerald*, 2013 WL 1627740, n.5. The Sacramento Division has awarded hourly rates ranging from $150 for new and inexperienced lawyers to $450 per hour to the most experienced.[3] *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 373-374 (E.D. Cal. 2014) ("[a] reasonable rate for associates working in this community is typically between $150 and $175 per hour," and awarding $400 for partners and $175 to associates); *AT&T Mobility LLC v. Yeager*, 2018 WL 1567819 at *4-5 (E.D. Cal. Mar. 30, 2018) (observing that "[i]n the Sacramento division, the average rate for junior associates is between $150 and $175," and the requested rate of $600 by an attorney who had experience exceeding twenty years was "unreasonably high for this forum," and reducing the award to $300 per hour due to the simplicity of the work required); *Eagle Sys. & Servs. v. Int'l Assoc. of Machinists*, 2017 WL 1213373 at *3 (E.D. Cal. Mar. 31, 2017) ("judges in this district accept rates between $400 and $450 for partners with 20 to 35 years of experience") (collecting cases). With these parameters in mind, the

---

[3] As noted, these hourly rates are comparable to those awarded in the Fresno Division. This Court previously reviewed the billing rates for the Fresno Division of the Eastern District and determined that for attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014). In addition, "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Id.*; *see also Roach v. Tate Publ'g & Enter.*, 2017 WL 5070264 at *9 (E.D. Cal. Nov. 3, 2017) ("attorneys with experience of twenty or more years of experience are awarded $350 to 400 per hour").

hourly rates for counsel must be adjusted to calculate the lodestar.

The Court notes that Diane Hernandez, who seeks the hourly rate of $375, "was admitted to practice in California in 1997." (Doc. 55-2 at 8, Mikhov Decl. ¶ 27) In addition, Mr. Mikhov reports that Ms. Hernandez "works frequently in lemon law cases." (*Id.*) Defendant objects to the hourly rate for Ms. Hernandez, reporting she is an independent contractor for Knight Law Group and charged $110 per hour for attorney time in a different action. (Doc. 105 at 9-10) However, it is reasonable that an attorney charge a different hourly rate in different actions and for different tasks. Because the hourly rate identified for Ms. Hernandez is within the reasonable range for the Sacramento Division based upon her significant experience, the Court finds the requested hourly rate is appropriate. *See Ontiveros*, 303 F.R.D. at 373-374.

The hourly rate for Mr. Mikhov and Russell Higgins, who were admitted to the bar in 2003, will be reduced to $300. *See Estrada v. iYogi, Inc.,* 2016 WL 310279, at *6 (E.D. Cal. Jan. 26, 2016) (approving $400 requested rate for partners with as much as 19 years of experience); *see also Gordillo*, 2014 WL 2801243 (awarding an hourly rate of $300 to an attorney who had "represented thousands of California consumers with Song–Beverly claims in the last fourteen years"). The hourly rate for Sepehr Daghighian, who began practicing law in late 2005, will be adjusted to $275. The hourly rate for Kristina Stephenson-Cheang, who began practicing law in 2008, will be adjusted to $250. Further, the rates for Alastair Hamblin[4], Amy Morse, Christopher Swanson, Mitchell Rosensweig, and Larry Castruita—who began practicing law between 2011 and 2013—will be adjusted to $225. Finally, the hourly rates for attorneys who have practiced law for less than five years—including Deepak Devabose, James Martinez, and Lauren Martin— are adjusted to $175. *See Ontiveros*, 303 F.R.D. 356 at 373-74; *Yeager*, 2018 WL 1567819 at *4-5.

Based upon the Court's survey of the attorney fees in both the Sacramento and Fresno Divisions and the Court's own knowledge, these hourly rates are reasonable for the tasks completed by counsel in

---

[4] Plaintiff did not provide any specific information regarding when Alastair Hamblin began practicing law, but rather only reported that he "graduated from Southwestern Law School in 2007" and began working at Knight Law Group in 2016. (Doc. 101-2 at 8, Mikhov Decl. ¶ 24) However the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014). Thus, the Court takes judicial notice of the admission date of Alastair Hamblin as February 2012, as represented on the website of the State Bar of California. *See id.*; Fed. R. Evid. 201(b).

this action.  *See id.*; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

### 3. Lodestar calculation

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida* , 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016).  With the time and rate adjustments set forth above, the lodestar in this action is **$21,135.00**:

| LAW FIRM | LEGAL PROFESSSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Knight Law Group ($10,525.00)** | Alastair Hamblin | 7.0 | $225 | $1,575.00 |
| | Amy Morse | 3.9 | $225 | $877.50 |
| | Christopher Swanson | 2.1 | $125 | $262.50 |
| | Deepak Devabose | 3.2 | $175 | $560.00 |
| | Diane Hernandez | 5.0 | $375 | $1,875.00 |
| | James Martinez | 2.5 | $175 | $437.50 |
| | Kristina Stephenson-Cheang | 11.2 | $250 | $2,800.00 |
| | Maite Colon | 0.0 | N/A | 0.00 |
| | Mitchell Rosenweig | 2.3 | $225 | $517.50 |
| | Russell Higgins | 0.8 | $300 | $240.00 |
| | Steve Mikhov | 4.6 | $300 | $1,380.00 |
| | | | | |
| **Hackler, Daghighian, Martino & Novack ($10,610.00)** | Sepehr Daghighian | 4.2 | $275 | $1,155.00 |
| | Larry Castruita | 37.2 | $225 | $8,370.00 |
| | Lauren Martin | 6.2 | $175 | $1,085.00 |
| | Andrea Plata | 0.0 | N/A | 0.00 |
| | | | | |
| **TOTAL** | | | | **$21,135.00** |

### 4. Application of a multiplier

Once a court has calculated the lodestar, "it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte,* 1 Cal.5th at 504 (citation omitted); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (indicating the court may adjust the fee award considering "the following factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the

contingent nature of the fee award").

Significantly, however, this case did not present novel or difficult questions of law or fact. Indeed, the issues related to the TIPM were addressed in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13-cv-08080-DDP-VBK. In addition, the issues presented in this action were not complex. *See Steel v. GMC*, 912 F. Supp. 724, 746 (N.J. Dist. 1995) ("the issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading"). Further, as Defendant observes, the facts were not significantly disputed and little discovery was required. It does not appear that significant skill was needed to pursue Plaintiff's claims. Furthermore, there is no evidence that "the nature of the litigation precluded other employment by the attorneys." To the contrary, Plaintiff's counsel—14 attorneys in total—expended less than 100 compensable hours of work on this action over the course of three years. Finally, the Court finds the contingent nature of the fee award is outweighed by the other factors, particularly in this action where the disputed facts and issues to be resolved were minimal. Accordingly, the Court finds the lodestar amount of $21,135.00 is reasonable and declines to award a multiplier.

## B.      Costs to be Awarded

Plaintiff requests costs in the amount of $9,946.67. (Doc. 100 at 1; Doc. 101-1 at 7) Plaintiff contends that "this Court should award all costs and expenses available under [California law] and not limit its award to those allowed under FRCP 54." (Doc. 101-1 at 21) According to Plaintiff, all costs should be awarded because "[u]nder the Song-Beverly Act, a prevailing buyer shall be allowed to recover as part of the judgment a sum equal to the aggregate amount costs <u>and expenses</u>." (*Id.* at 21, emphasis in original)

Significantly, the Ninth Circuit determined that an award of costs in district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases.[5] *See*

---

[5] An exception to this rule exists if "a state law provision allows for the awarding of costs as part of a substantive, compensatory damages scheme." *Self v. FCA US LLC*, 2019 WL 1994459, n. 8. (E.D. Cal. May 6, 2019) (citing Kelly v. Echols, 2005 WL 2105309, at *16 (E.D. Cal. Aug. 30, 2005); *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064-65 (9th Cir. 2003). Thus, where a statute expressly defines "damages" as including "costs," state law governs an award of costs because "the measure of damages is a matter of state substantive law." *Andresen v. Int'l Paper Co.*, 2015 WL 3648972, at *3 (C.D. Cal. June 10, 2015). Because the Song-Beverly Act does not make "costs" an element of damages as in *Clausen*, this Court has declined "to depart from the general rule that federal law governs whether costs should be awarded." *Self,*

22

*Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)). This is because "federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Thus, federal procedural law governs Plaintiff's request for an award of costs.

Rule 54 of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). For example, costs may be declined in light of "a losing party's limited financial resources" or where there has been "misconduct by the prevailing party." *Champion Produce*, 342 F.3d at 1022.

The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006). Thus, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citing 10 Wright & Miller §

---

2019 WL 1994459, n. 8; *see also Robinson v. Kia Motors Am., Inc.,* 2016 WL 4474505, at *1 (E.D. Cal. Aug. 25, 2016) (applying Rule 54(d) to analyze costs under the Song-Beverly Act).

2666, at 203).

### 1. Personal service

Pursuant to Local Rule 292(f)(2), a party may recover "fees for service by a person other than the Marshal under Fed. R. Civ. P. 4 to the extent they do not exceed the amount allowable for the same service by the Marshal." Currently, the United States Marshal charges $8 per mailed item and $65 per hour for personal service. 20 C.F.R. § 0.114(a). Requests for costs that exceed these amounts may be reduced to align with the amount authorized by Section 0.114(a). *See Yeager v. Bowlin,* 2010 WL 716389 at *2 (E.D. Cal. Feb. 26, 2010).

Plaintiff seeks costs for service of the summons to FCA in the amount of $37.95, service upon Tracy Chrysler in the amount of $104.85, and service of a deposition subpoena upon Premier Chrysler Inc.'s person most knowledgeable in the amount of $135.60. (Doc. 100 at 3) These fees for service of the summons upon FCA are within the amount authorized under Section 0.114(a) and will be allowed. However, the fees for service upon Tracy Chrysler and the deposition subpoena exceed the amount under Section 0.1114(a). Plaintiff offers no explanation as to why the fees for service upon Tracy Chrysler exceeded those of service upon FCA, and there is no regarding the amount of time required for service to be effected. Accordingly, the Court reduces these service fees to the $65.00 contemplated by statute, for a total reduction of $110.45 from the requested costs.

### 2. Messenger services and overnight courier

Plaintiff seeks $116.16 in attorney/messenger services and $27.54 for unidentified documents sent by overnight courier. (Doc. 100 at 3) However, "[c]ommunication charges like courier [and] mail… costs cannot be taxed" under Section 1920. *Nat'l Union Fire Ins. Co. v. Allied Prop. & Cas. Ins. Co.*, 2014 WL 3529980 at *1 (E.D. Cal. July 16, 2014) (citing *El–Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C.1995); *see also Cooper v. United Air Lines, Inc.,* 2015 WL 3548572 at *3(N.D. Cal. June 5, 2015) ("Overnight delivery and courier charges are not one of the enumerated categories of recoverable costs in § 1920"); *Bonilla v. KDH Backhoe Serv*., 2007 WL 39307 at *3 (N.D. Cal. Jan. 4, 2007) (finding "overnight delivery and messenger services" "fall outside of the[] parameters" of Section 1920). Accordingly, Plaintiff's request for these costs is denied, and the cost award will be reduced by $143.70.

### 3. Mileage

The itemization of costs indicates that Plaintiff seeks costs for travel by counsel to the pretrial conference in the amount of $128.76 and for depositions in the amount of $89.81. (Doc. 100 at 3)

Pursuant to Local Rule 292(f)(8), mileage for *witnesses*, not attorneys, may be taxed as costs. Likewise, other courts have determined attorneys are not entitled to mileage under Section 1920. *See, e.g.*, *Syngenta Seeds, Inc. v. Delta Cotton Co-op, Inc.,* 2007 WL 1106116 at *2 (E.D. Ark. Apr. 12, 2007) (declining "to award travel and mileage costs for his attorney as such costs are not found in § 1920"); *Horina v. City of Granite City*, 2007 WL 489212 at *2 (S.D. Ill. Feb. 9, 2007) ("mileage expenses of attorneys are not recoverable costs under 28 U.S.C. § 1920"). As a result, Plaintiff is not entitled to mileage for his attorney's travel. *See Atain Specialty Ins. Co. v. Sierra Pacific Mgmt. Co.,* 2016 WL 7034887 at *2 (E.D. Cal. Dec. 2, 2016) (finding the plaintiffs were "not entitled to the … mileage fee for their attorney's travel"). Therefore, Plaintiff's request for costs will be reduced by $218.57.

### 4. Deposition transcripts

Section 1920(2) provides that "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be taxed as costs. Similarly, Local Rule 292(f)(3) provides that items taxable as costs include "Court reporter fees." Thus, if found to be necessary to the litigation of a case, the costs of transcripts of depositions taken in a case may be taxed as costs under Rule 54 and Section 1920. *See Aflex Corp. v. Underwriters Laboratories*, 914 F.2d 175, 176-78 (9th Cir. 1990) (finding the "taxing of costs for copies of depositions" was proper).

On the other hand, costs incurred related to deposition transcripts that are "merely for the convenience of counsel" are not permitted under Section 1920. *Oyarzo v. Tuolumne Fire Dist.*, 2014 WL 1757217 at *7 (E.D. Cal. Apr. 30, 2014). As a result, costs for expediting transcripts, condensing the transcripts, and litigation support packages are not permitted. *See Daniel v. Ford Motor Co.,* 2018 WL 1960653 at *4 (E.D. Cal. Apr. 26, 2018) ("the court will not allow costs for rough drafts, expedited fees, CD litigation packages, … 'e-transcripts,' 'digital transcripts,' or 'condensed transcripts,' which appear to have been provided for the convenience of the attorneys"); *see also Hesterberg v. United States,* 75 F.Supp.3d 1220, 1225 (N.D. Cal. 2014) (noting it was "well established" in the district that

"expedited delivery charges for deposition transcripts are not allowable").

Plaintiff has not made any showing that the copies for Mr. Hernandez, the condensed transcript, litigation support package, and associated handling fees were necessary, and they appear to have been for the convenience of counsel. As a result, recovery is not permitted under Section 1982. *See Oyarzo*, 2014 WL 1757217 at *7; *Daniel*, 2018 WL 1960653 at *4. Accordingly, the Court will deduct $237.90 from the requested cost award.

### 5.     Miscellaneous deposition costs

The requested costs related to depositions also include parking in the amount of $62.00 and a conference room rental in the amount of $150.00. (Doc. 100 at 3) Such costs are not permitted under Section 1920. *See Self v. FCA US LLC*, 2019 WL 1994459 at*15 (E.D. Cal. May 6, 2019) (finding costs for "conference rooms, airport parking, gasoline, rental cars, meals, and lodging... are not permitted under section 1920"). Accordingly, the Court will deduct $212.00 from the cost award.

### 6.     Experts

Plaintiff seeks $7,613.70 related to expert witnesses, including the deposition of Richard Schmidt and preparation for the depositions of Barbara Luna and Darrell Blasjo. (Doc. 100 at 3)

Significantly, the Ninth Circuit determined a court must apply federal law to a request for costs in a diversity action. *See Aceves v. Allstate Ins. Co.,* 68 F.3d 1160 (9th Cir. 1995). The Court in *Aceves* awarded the prevailing party costs, including expert witness fees, under section 998(c) of the California Code of Civil Procedure. *Id.*, 68 F.3d at 1167. The Ninth Circuit determined the district court erred in applying California law because "reimbursement of witness fees is an issue of trial procedure" and in a diversity action, "federal law controls the procedure by which the district court oversaw the litigation." *Id.*, citing *Hanna v. Plumer*, 380 U.S. 460, 463 (1965). Accordingly, here, the Court must apply federal law to determine whether Plaintiff is entitled to recover expert fees as costs.

Under Section 1920, only compensation for "court appointed experts" and witness fees is permitted. *See* 28 U.S.C. § 1920. Neither of Plaintiff's witnesses were appointed by the Court. As such, Plaintiff is not entitled to recover the expert fees under Section 1920. On the other hand, 28 U.S.C. § 1821 provides that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance," including testimony at a deposition. Thus, a prevailing party may be awarded the witness

fee under Section 1821 for an expert who testifies at a deposition. *See Ruff v. County of Kings*, 700 F.Supp.2d 1245, 1247-48 (E.D. Cal. 2010). Consequently, Plaintiff is entitled to $40 in costs for the deposition of Mr. Schmidt, which results in a deduction of $7,573.70 from the requested award.

       7.     Total costs to be awarded

With the deductions set forth above, Plaintiff is entitled to $1,450.35 in costs under federal law, as provided under 28 U.S.C. §§ 1821 and 1920.

**V.    Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1.    Plaintiff's motion for fees is **GRANTED** in the modified amount of **$21,135.00**; and

2.    Plaintiff's motion for costs is **GRANTED** in the amount of **$1,450.35**.

IT IS SO ORDERED.

Dated:   **September 10, 2019**           **/s/ Jennifer L. Thurston**
                                     UNITED STATES MAGISTRATE JUDGE