# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY CELESTINE,<br><br>        Plaintiff,<br><br>    v.<br><br>FCA US LLC,<br><br>        Defendant. | Case No.: 2:17-cv-00597 - JLT<br><br>ORDER IMPOSING SANCTIONS ON THE PARTIES AND ATTORNEYS HIGGINS, MIKHOV, MARTINEZ, CASTRUITA, DAGHIGHIAN, SCHMITT, SUAREZ, FADEFF AND LIVEDALEN |

On July 15, 2019, the Court, court staff and the jury members assembled for trial. However, the attorneys and the parties did not appear. The cost of convening the jury and extra court staff totaled $6,884.78. Consequently, the Court imposes monetary **SANCTIONS** on the parties[1] and on attorneys Russell Higgins, Steve Mikhov, Larry Castruita, Sepher Daghighian, Erik Schmitt, Jeanette Suarez, Jeffrey Fadeff and Kristi Livedalen for their failure to notify the Court that the matter had settled.[2]

---

[1] The Court declines to discharge the order to appear and show cause as to the parties. The reason the jury was summoned at all was due to the parties' dispute and their demand for a jury trial.

[2] At the hearing, the Court discharged the order as to Aaron Brian and Scott Shepardson because it found they were not responsible for the failure at issue. The Court also discharges the order to show cause issued to James Martinez and Ms. Kuenstar, as it finds the failure was not attributable to them. Likewise, the Court refuses to impose sanctions on Maite Colon and Daniel Kalinowski because neither were attorney of record when the failure occurred. Indeed, though both claimed an oversight role in the "federal" practice group, both admitted that no one in the group performed any role in the case let alone had any responsibility for filing the notice of settlement. (Doc. 108 at 12)

    On the other hand, the Court is quite concerned with what seemed to be a lack of preparation by Ms. Colon and Mr. Kalinowski for the hearing in that neither could address who was responsible for filing the notice of settlement or, even, how the matter was resolved. Given their choice to interject themselves into this action, this is unacceptable.

## I. Background

This matter involved claims that the defendant sold the plaintiff a 2012 Dodge Durango in April 2012, which he contends had defects and nonconformities to warranty. The Court held a settlement conference in March 2018 (Doc. 35), but the parties' positions were intractable, and the matter did not resolve.

At a trial setting conference on December 12, 2018, the Court set the matter for trial to occur on July 15, 2019. (Doc. 49) In advance of the trial, the Court held the pretrial conference on May 28, 2019 at which it set deadlines for trial activities, including filing and opposing motions in limine. Id. In due course, the parties filed their motions which the Court decided without hearing on June 26, 2019 (Doc. 78) The parties also filed their witness and exhibit lists (Docs. 63-69, 71-78); their proposed jury instructions and verdict form. (Docs. 59-61) On July 2, 2019, the Court issued an order detailing the expected "courtroom decorum" to be exhibited during the trial (Doc. 79)

As noted above, at the duly appointed time on July 15, 2019, the prospective jury members, the Court and staff—which included the Jury Commissioner and an ECRO operator, sent from Fresno to assist with the trial—assembled for trial. Counsel and the parties did not appear. The Court has been informed by the Clerk of the Court that the cost for travel by this extra court staff was $720.86.

At the behest of the Court, the Courtroom Deputy Clerk contacted Sepher Daghighian's office but could reach only a secretary. Mr. Daghighian had identified himself as the attorney that would handle the trial for the plaintiff. The secretary informed the CRD that the case had settled on July 1, 2019. The CRD informed the secretary that the jury was waiting and that the Court expected a call back from a lawyer immediately. Thirty minutes later, the secretary called back and indicated she had spoken to Mr. Daghighian, but there was nothing to add and confirmed the matter settled on July 1, 2019. She relayed that Mr. Daghighian was "only" trial counsel, implying that filing a notice of

---

In addition, the Court is convinced that these attorneys were not honest with the Court. For example, when asked who assigned Ms. Colon to draft the response to the order to appear and to be present at the hearing, she claimed no one had and that it was merely her responsibility. Given what they had already told the Court, related to their absolute lack of connection to the case, this is inherently ludicrous, not the least of which was because the Court's "notice of electronic filing" of the order did not go to either Ms. Colon or Mr. Kalinowski, so someone *must* have instructed them to come to court.

Ms. Colon and Mr. Kalinowski are reminded that their ethical duty is to the Court, not to their workmates or supervisors. They SHALL NEVER again fail to be scrupulously honest with the Court.

settlement was not his responsibility.

Despite that jury members in federal court generally serve for one month, if they are not first selected on a jury, the Court was forced to discharge the entire panel of jurors due to its concern over the damage suffered to the dignity of the court in the jurors' eyes and because of the imposition on the jurors that the parties' and lawyers' conduct had caused. Indeed, five prospective jurors had traveled from Stanislaus County, one from Mariposa County, one from Merced County, six from Fresno County and four from Tulare County. Though nine were from Kern County, one traveled from Ridgecrest—a two-and-half to three-hour drive, depending upon traffic—and one came from California City, which is about a 90-minute drive. Many of the jurors were forced to travel the day before and spend the night, due to the prohibitive distance. The Court has been informed by the Jury Commissioner that the cost of summoning this jury was $6,163.92.

Though the settlement occurred on July 1, 2019, the parties and counsel did not file a notice of settlement. Even though the Court issued an order related to the conduct of the jury trial on July 2, 2019 (Doc. 79), once again, the attorneys and the parties did not file a notice of settlement. Despite the passage of two weeks after the case settled and until the trial was to start, the attorneys and the parties did not file a notice of settlement. Consequently, the Court ordered the attorneys of record and the parties to appear on August 2, 2019 to show cause why sanctions should not be imposed for the costs incurred caused by summoning the unneeded jury (Doc. 81).

In advance of the hearing, counsel filed a joint statement indicating that,

> 1. On July 1, 2019, the Parties reached a settlement in principle in the above referenced matter.
> 2. On July 12, 2019, Plaintiff emailed a draft joint notice of settlement for Defendant's review and signature prior to filing with the Court.
> 3. Trial counsels for Defendants, Jeanette C. Suarez and Jeffery Fadeff, were not included in the July 12, 2019 email and did not receive such a copy of the draft of the notice of settlement prior to July 15, 2019.

(Doc. 83 at 2) The statement then continued, "as of the date of the filing of this Joint Response, the Parties have yet to complete all the terms of the settlement." Id. at 2-3.

The Court held a hearing and required all counsel of record to appear. (Doc. 81) At the hearing, the Court was informed that, in fact, there was no "settlement in principle" reached on July 1, 2019.

Rather, the plaintiff, through a lawyer at the Knight law firm[3], signed an acceptance of a Rule 68 offer made sometime earlier. The Court was told by counsel for the defense that this is a typical course of conduct between FCA, its lawyers and the lawyers on the other side, because, though the acceptance of the Rule 68 offer should be filed, FCA prefers that judgment is not entered and the parties will settle on terms consistent with the Rule 68 offer. Mr. Castruita, counsel with Mr. Daghighian's firm, took the position that Rule 68 controlled, despite his prior contention that the trial attorneys have nothing to do with settling these types of cases[4].[5]

      Because certain attorneys, Mr. Mikhov, Mr. Higgins, Mr. Daghighian and Mr. Schmidt, failed to appear at the hearing on the order to show cause re: sanctions, the Court cited them to appear to show cause why they should not be held in civil contempt. Each appeared, including Mr. Craig Marcus who purported to represent Mr. Mikhov and Mr. Higgins and the entire Knight law firm.[6] Mr. Marcus asserted that the fault for the failure to file the notice of settlement was Ms. Colon's. Indeed, he told the Court that Ms. Colon was the person responsible for drafting the notice of settlement on July 12, 2019. Contrary to this assertion, at the original hearing Ms. Colon told the Court she had no connection to the case until after the Court issued the order to show cause on July 15, 2019 (Doc. 81).

      THE COURT: What work did you do on this case?

      MS. COLON: Your Honor, when the OSC re: sanctions was issued I met and conferred with

---

[3] The statements at the hearing were unclear as to whether the person who signed the offer had the authority to settle the case. This lawyer, named Amy Morse, is not an attorney of record.

[4] The Court is perplexed by the urged contention that the Knight law firm and Mr. Daghighian's law firm are completely separate such that they have discrete roles and the one firm does not have any involvement in what the other firm does. This is belied by Mr. Castruita's statements that he has seen emails over the last two years on a hundred settlements in these types of cases and by the fact that these firms are located at the same physical address and share the same suite of offices. When appearing on this case, each of plaintiff's attorneys in either the Knight law firm or in Mr. Daghighian's firm used the same address and suite number. The sole exception was Mr. Schmitt, though the State Bar website lists the same address and suite number on Constellation Boulevard for him as the other lawyers use. Thus, they seem to be more akin to separate "divisions" of the same law firm.
      Likewise, this seems to be contradicted by the report that Mr. Daghigian's firm was "engaged" to act as lead trial counsel in August 2017. (Doc. 101-3 at 5) If this is true, the Court is perplexed by Mr. Daghighian's failure to appear at the settlement conference held on March 20, 2018. (Doc. 35) Rather, Christopher Swanson, of the Knight law firm appeared despite the Court's express order that, "Unless otherwise permitted in advance by the Court, **the attorneys who will try the case shall appear** at the Settlement Conference . . ." (Doc. 19 at 6, emphasis in the original). To comply with the Court's order, Mr. Swanson had to be trial counsel—at least that was the implication caused by his appearance.

[5] The Court rejects that trial counsel are not responsible for filing a notice of settlement. All counsel have an ethical obligation to the Court and all counsel are required by the Court's Local Rule 160(a) to file the notice of settlement. There is no requirement that the notice be jointly filed to allow any attorney of record to file the notice.

[6] Because the purpose of the contempt citation was to coerce compliance with the Court's order to appear and explain the failure to appear at trial, the Court **DISCHARGES** the contempt.

> Ms. Suarez from FCA -- counsel for FCA in order to develop an approach into how to do this and we drafted a declaration which we filed with the Court.
>
> THE COURT: The facts that you put into that declaration I assume you had to get from somebody else because you didn't have any personal knowledge of it, is that true? Did you negotiate the settlement for example?
>
> MS. COLON: I did not.
>
> **THE COURT: Did you have any connection, either through oversight or direct work that you did, related to any aspect of this case before you appeared on July 19th?**
>
> **MS. COLON: No, Your Honor.**

(Doc. 108 at 12, emphasis added) When the Court questioned Mr. Marcus about what appeared to be an inconsistency between what counsel said at the original hearing and what he said at the "contempt" hearing, Mr. Marcus saw no inconsistency.[7]

Just as at the original hearing, at the "contempt" hearing no attorney admitted that it was his responsibility to file the notice of settlement. In fact, it appeared that each attorney simply walked away from the case without giving it or the Court any further consideration. In any event, the joint statement makes clear that no attorney did anything from July 1, 2019 through July 12, 2019 to alert the Court the matter had settled. The statement makes clear also that though counsel were fully aware as of the last business day before the trial, that no notice of settlement had been filed, they took no action. As pointed out previously, the Court's Local Rule 160(a) provides,

> When an action has been settled or otherwise resolved by agreement of the parties, or when any motion seeking general or interim relief has been resolved by agreement outside of Court, and whether the action is pending in the District Court or is before an appellate court, **it is the duty of counsel to immediately file a notice of settlement or resolution**.

Emphasis added.

Despite the obligations of the Local Rule, at he hearings, no one said, "this was my fault." Rather, while admitting a willingness "to take responsibility," these statements were couched in vague and ambiguous terms. The only attorney that counsel truly blamed for the failure was a lawyer who was not of record until after the Court ordered the parties and counsel to show cause re: sanctions. The Court expects more. When the Court asks a direct question, counsel should give a direct answer. There

---

[7] Mr. Marcus admitted no personal knowledge of the events. The Court presumes, therefore, that Mr. Marcus simply misread the transcript that he reported to have reviewed.

5

should be no attempt to avoid blame, no attempt to obfuscate the facts and no attempt to place responsibility on others for the attorney's own failure. Counsel are reminded that they practice a profession and do not merely work a job. Their ethics require their attention to their cases from "cradle-to-grave" and this means that they exercise diligence throughout.

To the extent that any attorney thought about the case once Ms. Morse signed the Rule 68 offer, apparently each believed that someone else would take care of filing the notice of settlement. This, however, does not excuse that *every* attorney representing either the plaintiff or the defendant was duty-bound to do it. The fact that no one would simply admits this, speaks of a bigger issue.

Local Rule 272 allows the Court to recover its costs in this instance. The Rule provides,

> If for any reason attributable to counsel or parties, including settlement, the Court is unable to commence a jury trial as scheduled when a panel of prospective jurors has reported for voir dire, the Court may assess against counsel or parties responsible all or part of the cost of the panel.

Thus, the Court will impose on the parties and counsel the costs of assembling the jury, which includes the costs of the Jury Commissioner to travel to Bakersfield to orient the jury and the cost of the ECRO operator to take down the appearances. In addition, the Court will impose sanctions jointly on Mr. Mikhov, Mr. Higgins, Mr. Daghighian and Mr. Schmidt to reimburse Ms. Suarez's[8] reasonable costs to attend the hearing caused by their failure to appear at the original hearing and/or to seek a timely continuance of that hearing. According to the website MapQuest, the distance between Mr. Suarez's office and the courthouse is 114 miles and the trip should take 2 hours and 21 minutes each way. Because she was admitted to the California State Bar (according to the Bar's website) in 2008, and the Court awarded an hourly rate of $250 to Kristina Stephenson-Cheang who was admitted in 2008, counsel SHALL pay to Ms. Suarez $1,200 in fees and $116.28 in mileage.

From the information presented at the hearings and in the joint response to the order to appear, it is apparent that the plaintiff's attorneys were fully aware on the last business day before trial that the notice had not yet been filed. Had they acted on that day, the Court could have cancelled the jury. In addition, it was clear that the parties and counsel believed that plaintiff's counsel would prepare a

---

[8] The Court recognizes that Ms. Suarez was not required to appear at the hearing. However, representing her client at a hearing held in a case in which her client is the defendant, is what attorneys are supposed to do.

notice of settlement. This does not excuse the defense from failing to ensure that the notice was filed or filing it themselves, but it does explain how the failure occurred. Thus, the Court **ORDERS**:

1. Sanctions in the amount of $6,884.78 are imposed as follows:

   a. Seventy-five percent of this total ($5,163.58), **SHALL** be paid by Larry Celestine and his counsel, Russell Higgins, Steve Mikhov, Larry Castruita, Sepher Daghighian and Erik Schmitt. The obligation is joint and several and the amount is immediately due and payable to the Court;

   b. Twenty-five percent of this total ($1,721.20), **SHALL** be paid by FCA and its counsel Jeanette Suarez, Jeffrey Fadeff and Kristi Livedalen. The obligation is joint and several and the amount is immediately due and payable to the Court;

2. Sanctions in the amount of $1,316.28 **SHALL** be paid by Russell Higgins, Steve Mikhov, Sepher Daghighian and Erik Schmitt to attorney, Jeanette Suarez. The obligation is joint and several and the amount is immediately due and payable.

IT IS SO ORDERED.

Dated: **September 16, 2019**         **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE